IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ERNEST ZIMMERMAN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL NO. H-07-00345 |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| COMMISSIONER OF THE SOCIAL | § | |
| SECURITY ADMINISTRATION, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION

Pending before the court[1] are Plaintiff's motion for summary judgment (Docket Entry No. 19) and Defendant's cross motion for summary judgment (Docket Entry No. 14).  The court has considered the motions, all relevant filings, the administrative record, and the applicable law.  For the reasons set forth below, Plaintiff's motion for summary judgment is **DENIED** and Defendant's cross motion for summary judgment is **GRANTED**.

## I. Case Background

### A. Procedural History

In this action, Ernest S. Zimmerman ("Plaintiff") seeks review of the decision of the Commissioner of the Social Security Administration ("Commissioner" or "Defendant") denying his application for disability insurance benefits and supplemental

---

[1]     The parties consented to proceed before the undersigned magistrate judge for all proceedings, including trial and final judgement, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. Docket Entry No. 12.

security income payments under Title II and Title XVI of the Social Security Act ("the Act").

Plaintiff filed his application on March 15, 2004.[2] After the application was denied at the initial and reconsideration levels, he requested a hearing before an Administrative Law Judge of the Social Security Administration ("ALJ").[3] The ALJ granted Plaintiff's request and conducted a hearing in College Station, Texas, on January 19, 2006.[4] After listening to testimony presented at the hearing and reviewing the medical record, the ALJ issued an unfavorable decision on March 8, 2006.[5] The ALJ found Plaintiff was not disabled at any time during the period covered by his application, and Plaintiff appealed that decision on March 28, 2006.[6]

On September 29, 2006, the Appeals Council denied Plaintiff's request for review of the ALJ's decision.[7] On November 22, 2006, the Appeals Council denied Plaintiff's second request for review.[8] The ALJ's decision is, therefore, the final decision of the Commissioner. Plaintiff filed this timely civil action pursuant to 42 U.S.C. § 405(g) for judicial review of the

---

[2]    Transcript of the Administrative Proceedings ("Tr.") 74-76.

[3]    Tr. 50, 58, 63.

[4]    Tr. 364.

[5]    Tr. 30-32, 33-45.

[6]    Tr. 28.

[7]    Tr. 23-25.

[8]    Tr. 7-8.

Commissioner's unfavorable decision.

**B. Factual History**

1. Plaintiff's Age, Education, and Work Experience

Plaintiff was born on January 5, 1971, and was thirty-five years old on the date of the ALJ's decision.[9]  He claims he became unable to work on December 8, 2003.[10]  In addition to completing the tenth grade, Plaintiff obtained vocational training.[11]  Prior to the onset of his alleged disability, Plaintiff was employed as a licensed water operator for a water company for approximately two years, a "dozer" operator for a construction company for approximately one year, a front-end-loader operator for a steel company for an unknown amount of time, a laborer for a construction company for an unknown amount of time, a welder for a pressure tank company for approximately one year, and a welder building cattle feeders for less than one year.[12]

2. Plaintiff's Testimony

During the hearing, the ALJ solicited testimony from Plaintiff, a medical expert ("ME"), and a vocational expert ("VE").  Plaintiff testified to suffering from pain in his back and hips, an inability to stand for long periods of time or bend

---

[9]     Tr. 34, 74.

[10]    Tr. 84.

[11]    Tr. 368.  Plaintiff obtained a Class D flow water license.  Id.

[12]    Tr. 85.

all the way to the ground, and numbness in both of his arms.[13]
He testified to taking medication that helped to relieve some of
his pain.[14]   Plaintiff further testified to suffering from
depression, which he explained resulted in feelings of
worthlessness.[15]   He stated that he previously took Prozac but
switched to Effexor after a suicide attempt.[16]   Effexor,
according to Plaintiff's testimony, helped with his depression.[17]
Plaintiff stated that he still experienced some depression, but
went on to state that he "work[s] on it."[18]

       Plaintiff further testified he experienced anxiety on a
regular basis.[19]   Specifically, Plaintiff explained that he had
trouble dealing with pressure, did not trust people, and became
confrontational when he was upset.[20]   He stated that his
confrontational attitude interfered with his previous
employment.[21]   In response to his attorney's question about drug
and alcohol consumption, Plaintiff stated that he had been in
"three rehabs" but had been drug-free since February 2004.[22]

---

[13]   Tr. 370-371.

[14]   Tr. 370.

[15]   Tr. 371.

[16]   Tr. 173, 371.

[17]   Id.

[18]   Id.

[19]   Tr. 372.

[20]   Tr. 372-373.

[21]   Id.

[22]   Tr. 373.

In regard to his physical activities, Plaintiff stated that he got up in the mornings and let his dogs out before going back to bed.[23]  Plaintiff also testified to going on regular grocery shopping trips, during which he sometimes used an "electric chair."[24]  After the shopping trips, Plaintiff explained that he usually rested or took a hot shower.[25]  He testified that he could sit or stand for up to thirty minutes at a time.[26]  Plaintiff also testified that he did woodwork and carved canes for up to twenty minutes at a time.[27]  He further testified that he attended an Alcoholics Anonymous meeting once-a-week for one hour.[28]

### 3. Medical Records

Although Plaintiff's medical records appear generally to support his testimony, some discrepancies exist relating to the severity of his complaints.  On April 10, 2003, Plaintiff was seen by Barbara Davidson, M.D., ("Dr. Davidson") of Spine Specialists, located in Tyler, Texas.[29]  Plaintiff complained of lower back pain, and Dr. Davidson recommended an aggressive exercise program, weight loss, and occasional epidural

---

[23]    Tr. 370.

[24]    Tr. 371.

[25]    Id.

[26]    Tr. 372.

[27]    Tr. 371.

[28]    Tr. 378.

[29]    Tr. 154.

injections.[30]

During Plaintiff's second visit to Spine Specialists, on May 8, 2003, Dr. Davidson reported that she gave Plaintiff two epidural injections, and that he experienced forty-percent "immediate relief" with eighty percent "overall relief" after receiving the first injection.[31]  Dr. Davidson also reported that Plaintiff's left side was doing well and that he had one-hundred-percent immediate relief and one-hundred-percent relief overall after receiving the second injection.[32]  Dr. Davidson then reiterated her recommendation that Plaintiff lose weight and exercise.[33]

On February 20, 2004, Plaintiff was admitted to Palestine Regional Medical Center following an apparent suicide attempt.[34] Plaintiff, according to the Medical Center's report, admitted that he took approximately twenty "Prozac and Soma" tablets.[35] He also admitted to drinking "a lot of alcohol."[36]

On June 9, 2004, Plaintiff visited Tyler Counseling & Assessment Center in Tyler, Texas.[37]  Erick Lenert, Ph.D., ("Dr.

---

[30]   Tr. 154-155.

[31]   Tr. 149.

[32]   Id.

[33]   Id.

[34]   Tr. 157-158.

[35]   Id.

[36]   Id.

[37]   Tr. 208-212.

Lenert") performed a mental status examination on Plaintiff and observed that Plaintiff's speech was somewhat monotone but was coherent and relevant.[38]   Additionally, Dr. Lenert concluded that Plaintiff's abstract thinking was "adequate" and that his thought processes did not evidence "looseness of association, tangential or circumstantiality."[39]   During the examination, Plaintiff stated that he did not trust people and had trouble getting along with others.[40]   Notably, however, in Plaintiff's disability supplemental interview outline, Plaintiff answered "yes" to the question "do you get along well with other persons in general?"[41]

On June 29, 2004, Plaintiff visited Michael Hanley, M.D., ("Dr. Hanley") for an independent medical examination.[42]   Dr. Hanley noted that Plaintiff had "discontinued work because of a combination of physical ailments and a dispute with his employer."[43]   Dr. Hanley also stated that Plaintiff "apparently has sleep apnea, and uses a [CPAP]."[44]   In reviewing Plaintiff's medical history, Dr. Hanley stated that "patient's MRI is near normal, in that he has been receiving epidural steroid injections

---

[38]   Tr. 209.

[39]   Id.

[40]   Tr. 208.

[41]   Tr. 93.

[42]   Tr. 213-214.

[43]   Tr. 213.

[44]   Id.   A "CPAP" is a continuous positive airway pressure device. Mosby's Pocket Dictionary of Medicine, Nursing, & Allied Health 234 (1st ed. 1990).

with some benefit."[45]   Dr. Hanley further noted that the spine specialists encouraged Plaintiff to start an exercise program and lose weight, to "which he was very resistant."[46]   Dr. Hanley examined X-rays of the Plaintiff's left hip and lumbar spine and declared that they were "normal."[47]   Dr. Hanley took note of Plaintiff's use of a cane, but stated that "[e]xamination of his lower extremities shows sensory intact, motor was 5/5 in all muscle groups."[48]   Dr. Hanley came to the same conclusion in regard to Plaintiff's upper extremities.[49]   In regard to Plaintiff's physical abilities, Dr. Hanley noted that Plaintiff could not "heel, toe or tandem walk" or "squat."[50]   Finally, Dr. Hanley concluded that Plaintiff had "back and hip pain, probably secondary to obesity, and lack of physical activity."[51]

Plaintiff visited Tim Leigheber, M.D., ("Dr. Leigheber") at Tyler Open MRI in Tyler, Texas, on July 9, 2004, for an MRI.[52] Dr. Leigheber noted in his report that Plaintiff's lumbar vertebrae was normally aligned and that no compression fracture

---

[45]   Tr. 213.

[46]   Id.

[47]   Id.

[48]   Id.

[49]   Id.

[50]   Id.

[51]   Id.

[52]   Tr. 312.

or marrow edema was detected.[53]   Furthermore, Dr. Leigheber noted
that Plaintiff may have a slight degenerative disc desiccation
but did not have focal disc protrusion or canal compromise.[54]

Plaintiff's primary care physician, Rick Taylor, M.D., ("Dr.
Taylor") of Pain Care Clinics, performed numerous spinal
decompression treatments on Plaintiff in response to Plaintiff's
complaints of lower back pain.[55]   On August 4, 2004, Plaintiff's
tenth treatment, Dr. Taylor noted that Plaintiff "tolerated the
treatment well" after undergoing spinal decompression.[56]
Additionally, Dr. Taylor recommended lumbosacral stabilization
exercises.[57]   Throughout the visits, Plaintiff stated that his
pain level was either a seven or eight on a scale of ten.[58]

On December 23, 2006, Dr. Taylor filled out a "physical
residual functional capacity questionnaire."[59]   Dr. Taylor
indicated that Plaintiff was capable of sitting and standing for
up to thirty minutes at a time and less than two hours in an
eight-hour workday.[60]   Furthermore, Dr. Taylor indicated that
Plaintiff was incapable of even low stress jobs, could never lift

---

[53]   Id.

[54]   Id.

[55]   Tr. 291-310.

[56]   Tr. 292.

[57]   Tr. 291.

[58]   Tr. 292, 294, 296, 299, 300, 302.

[59]   Tr. 265-268.

[60]   Tr. 267.

ten pounds, and could never twist, stoop, crouch/squat, climb ladders, or climb stairs.[61]   Finally, Dr. Taylor indicated that Plaintiff did not have significant limitations with reaching, handling or fingering and could use his hands and fingers one hundred percent of an eight-hour working day and his arms ten percent of an eight-hour workday.[62]

Plaintiff visited Pain Care Clinics several times from March 11, 2004, to January 3, 2006.[63]   During these visits, Plaintiff refilled pain medications and sought follow-up treatment for his lower back pain.[64]

Plaintiff's records establish that he was approximately five feet eleven inches tall and typically weighed between 322 and 398 pounds.[65]

### 4. Medical Expert's ("ME") Testimony

Based on his review of the medical evidence, the ME, a board-certified psychiatrist, testified at the hearing that the record revealed that Plaintiff had a history of depression and substance dependence.[66]   The ME also summarized the findings of Dr. Lenert's mental status examination of Plaintiff and concluded

---

[61]   Tr. 267-268.

[62]   Tr. 268.

[63]   Tr. 269-310, 313-322.

[64]   Id.

[65]   Tr. 269, 289.

[66]   Tr. 375.

that Plaintiff "does have major depression and he seems reasonably well-stabilized."[67]   The ME went on to state, however, that Plaintiff's depression was not severe enough to meet an enumerated listing.[68]   The ME testified that Plaintiff did not satisfy all the elements of listing 12.04 in the regulations (the "Listings").[69]

The ME also answered the ALJ's questions about Plaintiff's mental Residual Function Capacity ("RFC").[70]   The ME testified that Plaintiff had no limitation on his ability to carry out short, simple instructions or his ability to make adjustments on simple work-related decisions.[71] The ME stated that Plaintiff had a slight limitation in regard to his ability to understand and remember detailed instructions, respond appropriately to changes in routine work settings, and interact appropriately with the public, a supervisor, and a co-worker.[72]   Finally, the ME testified that Plaintiff had a moderate limitation in his ability to respond appropriately to work pressures in a typical work setting.[73]

In response to a question from Plaintiff's attorney about

---

[67]   Tr. 376.

[68]   Id.

[69]   Id.   See 20 C.F.R. Pt. 404, Subpt. P, App. 1.

[70]   Tr. 377.

[71]   Id.

[72]   Id.

[73]   Id.

11

whether not getting along with and yelling at people are symptoms of an anti-social disorder, the ME replied "not necessarily."[74] The ME emphasized that a major symptom of anti-social disorder is extensive involvement with the legal system and noted that Plaintiff had not demonstrated that symptom.[75]

The administrative record also contains a physical RFC assessment form completed by a state medical consultant ("MC"). When evaluating Plaintiff's limitations on this form, the MC was instructed to "[b]ase [his] conclusions on **all evidence** in [the] file," ensure that they had "given appropriate **weight to treating source conclusions,**" and had "[c]onsidered and responded to **any alleged limitations imposed by symptoms** (pain, fatigue, etc.) attributable, in [his] judgment, to a medically determinable impairment."[76]

The MC, after reviewing Plaintiff's file, concluded that Plaintiff was capable of occasionally lifting fifty pounds, frequently lifting twenty-five pounds, standing and sitting about six hours in an eight-hour workday, and was capable of unlimited pushing and pulling.[77]   Furthermore, the MC concluded that Plaintiff had no postural, manipulative, visual, communicative,

---

[74]    Tr. 378.

[75]    Tr. 379.

[76]    See, e.g., Tr. 238 (emphasis added).

[77]    Tr. 239.

or environmental limitations.[78]    The MC also determined that Plaintiff was "not fully credible."[79]

In addition to the physical RFC assessment form, the administrative record also contains a mental RFC assessment form completed by a state MC.[80]  This MC opined that Plaintiff could "understand, remember and carry out only simple instructions" and could "make simple decisions."[81]    The MC further opined that Plaintiff is able to "concentrate for extended periods and respond appropriately to change in routine work setting."[82]  The MC concluded by stating that Plaintiff was "not fully credible."[83]

### 5. Vocational Expert's ("VE") Testimony

After reviewing the file and listening to the hearing testimony, the VE stated that Plaintiff had held six jobs since 1994.[84]  The ALJ asked the VE if a hypothetical individual of Plaintiff's age and educational background with Plaintiff's work history, would be able to perform certain jobs assuming that the individual would also be restricted to: a) working at a light level; b) lifting no more than twenty pounds at a time; c)

---

[78]    Tr. 240-242.

[79]    Tr. 243.

[80]    Tr. 220-223.

[81]    Tr. 222.

[82]    Id.

[83]    Id.

[84]    Tr. 369.

alternating between sitting and standing at-will; d) frequently lifting ten pounds; e) avoiding heights or climbing; and f) not working around moving dangerous equipment.[85]   Furthermore, the ALJ added "low-stress" and "limited public contact" to his hypothetical.[86]

Presented with this hypothetical, the VE opined that Plaintiff could "not do any of his past work."[87]   Furthermore, the VE opined that Plaintiff could not transfer any skills from his previous work to jobs that were limited to light work.[88] Based on this assessment, the ALJ asked the VE to provide three examples of unskilled work that would be suitable under the ALJ's hypothetical.[89]   The VE responded with "a small products assembler" and testified that "there are about 1,000 positions in the Bryan College Station region and about 200,000 nationally."[90] The VE also provided the position of "hardware assembler" and stated that there "are about 300 positions" locally and "40,000 nationally."[91]   Finally, the VE opined that another suitable occupation under the ALJ's hypothetical would be "an assembler, bench assembler/lawn and garden equipment" and stated there were

---

[85]   Tr. 383.

[86]   Id.

[87]   Id.

[88]   Id.

[89]   Id.

[90]   Tr. 383-384.

[91]   Tr. 384.

14

"about 150 positions [locally] and about 20,000 nationally."[92] Additionally, in response to a question from the ALJ, the VE testified that Plaintiff's use of a cane would not bar him from any of the aforementioned positions.[93]

In response to a followup question posed by Plaintiff's attorney, the VE testified that an individual who embodies the additional limitations of a) sensitivity to stress; b) a lack of concentration; and c) an inability to deal with co-workers that results in yelling outbursts up to a third of a day would have a reduced ability to maintain employment.[94]

### 6. The ALJ's Opinion

The ALJ found that Plaintiff was insured for disability benefits through the date of his decision and had not engaged in any substantial gainful activity since the alleged onset date of his disability.[95]   The ALJ found that Plaintiff's sleep apnea, degenerative disc disease, obesity, and personality disorder were "severe" impairments.[96]   The ALJ determined, however, that none of these impairments met or equaled any of the enumerated impairments in the Listings.[97]

---

[92]     Id.

[93]     Id.

[94]     Tr. 385-386.

[95]     Tr. 34.

[96]     Tr. 35.

[97]     Tr. 44.

According to the ALJ, Plaintiff's testimony was "not totally credible," and he retained an RFC that allowed him to:

> lift/carry no more than twenty pounds occasionally and ten pounds frequently, stand/walk for about six hours in an eight-hour workday, and sit at least two hours in an eight-hour workday, compromised by the need to alternate with sitting/standing at will in an eight-hour workday, and while performing at that level of exertion would be precluded from climbing, working at unprotected heights and on or about moving or dangerous equipment or machinery with limited public contact and low stress unskilled tasks due to depression.[98]

Utilizing this RFC, the ALJ determined that Plaintiff was unable to perform any of his past relevant work and had "no transferable skills from skilled and semi-skilled work previously performed."[99]   The ALJ stated that Plaintiff had the RFC to perform a "significant range of light unskilled work."[100] Furthermore, the ALJ considered the VE's testimony to determine that "jobs that the claimant was able to perform existed in significant numbers in the national economy."[101]   The ALJ concluded that Plaintiff "was not under a 'disability,' as defined in the Social Security Act, at any time through the date of this decision."[102]

## II. Standard of Review and Applicable Law

The court's review of a final decision by the Commissioner

---

[98]   Id.

[99]   Id.

[100]   Id.

[101]   Id.

[102]   Id.

to deny disability benefits is limited to two issues: 1) whether proper legal standards were used to evaluate the evidence; and 2) whether substantial record evidence supports the decision. Waters v. Barnhart, 276 F.3d 716, 718 (5th Cir. 2002); Brown v. Apfel, 192 F.3d 492, 496 (5th Cir. 1999).

The widely accepted definition of "substantial evidence" is "something more than a scintilla but less than a preponderance." Carey v. Apfel, 230 F.3d 131, 135 (5th Cir. 2000); Brown, 192 F.3d at 496.  In applying this standard, the court is to review the entire record, but the court may not reweigh the evidence, decide the issues de novo, or substitute the court's judgment for the Commissioner's judgment.  Brown, 192 F.3d at 496.  The Commissioner is given the responsibility of deciding any conflicts in the evidence.  Id.  "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."  42 U.S.C. § 405 (g).  Only if no credible evidentiary choices of medical findings exist to support the Commissioner's decision should the court overturn it.  Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988).  In other words, the court is to defer to the decision of the Commissioner as much as is possible without making the court's review meaningless.  Brown, 192 F.3d at 496.

The legal standard for determining disability under the Act is whether the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical

17

or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A).   To determine whether a claimant is capable of performing any "substantial gainful activity," the regulations provide that disability claims should be evaluated according to the following sequential five-step process:

> (1) a claimant who is working, engaging in a substantial gainful activity, will not be found to be disabled no matter what the medical findings are; (2) a claimant will not be found to be disabled unless he has a "severe impairment;" (3) a claimant whose impairment meets or is equivalent to an impairment listed in [20 C.F.R. Pt. 404, Subpt. P, App. 1] will be considered disabled without the need to consider vocational factors; (4) a claimant who is capable of performing work that he has done in the past must be found "not disabled;" and (5) if the claimant is unable to perform his previous work as a result of his impairment, then factors such as his age, education, past work experience, and RFC must be considered to determine whether he can do other work.

Bowling v. Shalala, 36 F.3d 431, 435 (5th Cir. 1994).

To be entitled to benefits, a claimant bears the burden of proving he is disabled within the meaning of the Act.   Wren v. Sullivan, 925 F.2d 123, 125 (5th Cir. 1991).   By judicial practice, this translates into the claimant bearing the burden of proof on the first four of the above steps and the Commissioner bearing it on the fifth.   Brown, 192 F.3d at 498; Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994).   The analysis stops at any point in the five-step process upon a finding that the claimant is or is not disabled.   Greenspan, 38 F.3d at 236.

In certain cases, an ALJ may use the Grid to determine

18

whether a claimant is capable of performing other work. <u>Watson v. Barnhart</u>, 288 F.3d 212, 216 (5th Cir. 2002). The Grid is applicable if the "claimant suffers only from exertional impairments, or . . . the claimant's nonexertional impairments do not significantly affect his residual functional capacity." <u>Id.</u> (quoting <u>Crowley v. Apfel</u>, 197 F.3d 194, 199 (5th Cir. 1999)). In cases where nonexertional factors can limit the range of jobs a claimant can perform, "the ALJ must rely on expert vocational testimony to establish that jobs exist." <u>Scott v. Shalala</u>, 30 F.3d 33, 35 (5th Cir. 1994).

### III. Analysis

Plaintiff requests judicial review of the ALJ's decision to deny disability benefits, contending that the ALJ's determination is not supported by substantial evidence and results from legal error. Specifically, Plaintiff alleges the ALJ's decision failed to properly consider Plaintiff's obesity, failed to properly assess Plaintiff's credibility, erred in rejecting the opinion of Plaintiff's treating physician, failed to properly evaluate Plaintiff's mental impairments, erred in finding that Plaintiff's impairments did not meet or equal the requirements of Listing 1.04, and erred in finding that Plaintiff can perform other work existing in significant numbers in the national economy.

Defendant, conversely, contends that the ALJ's decision is supported by substantial evidence of record and denies all of Plaintiff's specific allegations. Defendant, therefore,

maintains the ALJ's decision should stand.

The court reviews each party's arguments below.

**A. Obesity**

Plaintiff first contends the ALJ erred by failing to properly assess Plaintiff's obesity as a disabling factor under SSR 02-01p.  See SSR 02-01p, 2002 SSR LEXIS 1.  Plaintiff argues that, because the ALJ did not specifically discuss his obesity at the later steps of the analysis, the opinion is flawed.  The court disagrees.

The ALJ acknowledged that Plaintiff was obese when he found at step two of the analysis that Plaintiff's obesity constituted a severe impairment.[103]  This finding satisfied the portion of SSR 02-01p that required the Commissioner to consider obesity in determining whether a claimant had a medically determinable impairment that was severe.  Furthermore, the ALJ referenced Listing 1.00(Q), Appendix 1, Subpart P, Regulations No. 4 and acknowledged that "consideration must be given to any additional and cumulative effects of obesity."[104]

According to Social Security Ruling (SSR) 96-8p, the ALJ is also required to explain how the evidence supports the conclusions about a claimant's limitations, and the ALJ in this case met this burden.  See SSR 96-8p, 1996 LEXIS 8.  Specifically, the ALJ noted that Plaintiff is able to perform

---

[103]   See Tr. 23.

[104]   Tr. 38.

20

household chores such as shopping and is able to carve ornate wooden canes.[105]   Furthermore, the ALJ cited the MC's opinion that Plaintiff could occasionally carry fifty pounds and sit or stand about six hours in an eight-hour workday.[106]   Under this assessment, as the ALJ pointed out, Plaintiff would "retain the residual functional capacity for medium work."[107]   The ALJ, after considering all of the evidence, concluded that Plaintiff was only capable of light work and would also be "precluded from climbing, working at unprotected heights and on or about moving or dangerous equipment or machinery."[108]   There is nothing in the record to suggest that the ALJ did not properly consider additional limitations due to Plaintiff's obesity and factor these into Plaintiff's RFC assessment.

Furthermore, Plaintiff bears the burden of producing evidence that proves a link between his obesity and any further limitations.   See SSR 00-3P, 2000 LEXIS 3.   Plaintiff does point to Dr. Hanley's comments that Plaintiff's obesity contributed to his back and joint pain.[109]   However, as the ALJ noted, Dr. Hanley stated that Plaintiff's April 2003 MRI was "near normal"[110] and

---

[105]   Tr. 42.

[106]   Tr. 239.

[107]   Tr. 39.

[108]   Id.

[109]   Tr. 213-214.

[110]   The court notes that this MRI was taken eight months before Plaintiff's alleged onset date.   However, Dr. Hanley's observation regarding Plaintiff's MRI is part of the report that Plaintiff himself uses for support.

that Plaintiff's lower and upper extremities showed "sensory intact" and "motor was 5/5 in all muscle groups."[111]  Dr. Hanley also stated that X-rays of Plaintiff's left hip and lumbar spine were normal.[112]   Finally, Dr. Hanley noted "[t]he spine specialists also encouraged him to lose weight, and start an exercise program, for which he was very resistant."[113]

Plaintiff additionally notes he used a cane, and implied that further limitations should be added as a result.  Plaintiff, however, admits it is not clear from the record for what purpose Plaintiff uses the cane.[114]   Furthermore, the VE testified that the use of a cane would not bar plaintiff from performing the jobs that he recommended.[115]

Plaintiff additionally alleges the ALJ improperly noted Plaintiff's apparent lack of motivation for losing weight.  The record shows that several doctors recommended weight loss programs and the ALJ did note in his opinion that Plaintiff's "failure to lose weight could suggest a lack of motivation to be well in order to return to work."[116]   The ALJ, however, noted this

---

[111]   Tr. 213.

[112]   Id.

[113]   Id.

[114]   See Plaintiff's Motion for Summary Judgment, Docket Entry No. 19, at 9.

[115]   Tr. 384.

[116]   Tr. 41.

during a discussion of Plaintiff's credibility, the determination of which is the responsibility of the ALJ.  See Carrier v. Sullivan, 944 F.2d 243, 247 (5th Cir. 1991).  It is thus apparent from the ALJ's opinion that the ALJ did not, as Plaintiff alleges, dismiss Plaintiff's obesity because of a belief that Plaintiff did not try hard enough to lose weight.

Considering the foregoing, Plaintiff clearly did not carry his burden to produce evidence that his weight resulted in any impairment or limitation attributed to obesity beyond those that were otherwise considered by the ALJ in his analysis of Plaintiff's RFC.  The court finds, therefore, that the ALJ properly took into account Plaintiff's weight in rendering his decision, even if the decision failed to make explicit mention of the direct impact of obesity on Plaintiff's RFC.  Plaintiff gave the ALJ no reason to consider additional, weight-related, functional limitations when making his determination.

**B. Credibility Assessment**

Plaintiff next argues that the ALJ's credibility finding is not supported by substantial evidence.

"While an ALJ must consider an applicant's subjective complaints of pain, he is permitted to examine objective medical evidence in testing the applicant's credibility.  He may find, from the medical evidence, that an applicant's complaints of pain are not to be credited or are exaggerated."  Johnson v. Heckler, 767 F.2d 180, 182 (5th Cir. 1985).  Additionally, the Fifth

Circuit has held that an ALJ was correct in considering a claimant's ability to perform household chores when evaluating the credibility of his complaints.  See Vaughan v. Shalala, 58 F.3d 129, 131 (5th Cir. 1995).

In regard to Plaintiff's testimony that he was unable to work due to chronic back pain, the ALJ cited a number of contradictory medical findings from the record, including Dr. Hanley's finding that Plaintiff's motor strength was full at 5/5 in all muscle groups.[117]   Furthermore, the ALJ cited an examination form from January 2006 that stated that Plaintiff's pain had improved following medication and physical therapy.[118] The ALJ also noted that the record indicates Plaintiff's ability to perform "activities of daily living."[119]

In regard to Plaintiff's statement that he suffers from sleep apnea, the ALJ noted that Plaintiff uses a "nasal continuous positive airway pressure device" and has reported "feeling and sleeping better."[120]  Furthermore, the ALJ pointed to two respiratory examinations in the record that revealed "normal breath sounds without any signs of respiratory distress."[121]

The ALJ also noted that claimant's activities are

---

[117]    Tr. 40.

[118]    Tr. 40.

[119]    Id.

[120]    Id.

[121]    Id.

"consistent with an ability to perform light work."[122]   The ALJ noted that Plaintiff is able to go grocery shopping, perform household chores, and carve wooden walking canes.[123]   The ALJ acknowledged that Plaintiff undoubtedly experiences "some pain and discomfort with his condition" but asserted that Plaintiff's statements are "inconsistent with an allegation of total disability."[124]   The ALJ also clarified the scope of his credibility assessment by stating that Plaintiff's "allegations concerning his subjective symptoms are found to be credible only to the extent that he is unable to perform medium and heavy work, but not credible to the extent that they preclude him from all work activities."[125]

Finally, the ALJ noted that "two State Agency Medical Consultants have opined that his impairments are not disabling."[126]   The ALJ subsequently explained that the MCs' opinions were consistent with the record and reflect "frequent outpatient records of subjective complaints, but little objective evidence to substantiate the claimant's allegations."[127] Furthermore, this court notes that the state MCs both opined that

---

[122]   Tr. 41.

[123]   Id.

[124]   Id.

[125]   Id.

[126]   Id.

[127]   Id.

Plaintiff is not "fully credible."[128]

This court is simply not at liberty to reweigh the evidence or overrule the ALJ's decisions as to credibility. See Chambliss v. Massanari, 269 F.3d 520, 522 (5th Cir. 2001); Carrier v. Sullivan, 944 F.2d 243, 247 (5th Cir. 1991); Villa v. Sullivan, 895 F.2d 1019, 1024 (5th Cir. 1990). Finding that the ALJ's evaluation of Plaintiff's subjective complaints was supported by substantial record evidence, the court must defer to the ALJ's assessment. See Villa, 895 F.2d at 1024. Although it is quite possible that Plaintiff's ability to do some types of work may be limited by his experiencing some pain, the inability to work without some pain will not in and of itself render him disabled. See Chambliss, 269 F.3d at 522; Richardson v. Bowen, 807 F.2d 444, 448 (5th Cir. 1987).

## C. Opinion of Plaintiff's Treating Physician

Plaintiff next contends the ALJ erred in rejecting the opinion of Plaintiff's treating physician. Specifically, Plaintiff asserts that, under Newton v. Apfel, 209 F.3d 448 (5th Cir. 2000), the ALJ is obligated to employ the factors set forth in 20 C.F.R. 404.1527(d)(2) and perform a detailed analysis of the treating physician's views.

Dr. Taylor, identified by the ALJ as Plaintiff's treating physician, indicated in a physical RFC questionnaire that Plaintiff is capable of sitting and standing for up to thirty

---

[128]    Tr. 222, 243.

26

minutes at a time and less than two hours in an eight-hour
workday.[129] Furthermore, Dr. Taylor indicated that Plaintiff was
incapable of even low stress jobs, could never lift ten pounds,
and could never twist, stoop, crouch/squat, climb ladders, or
climb stairs.[130]   Finally, Dr. Taylor indicated that Plaintiff
does not have significant limitations with reaching, handling or
fingering and can use his hands and fingers one hundred percent
of an eight-hour workday and his arms ten percent of an eight-
hour workday.[131]

An ALJ is required to consider all medical opinions in a
claimant's record.   20 C.F.R. §§ 404.1527(b), 416.927(b).   A
treating physician's opinion on an issue reserved for the
Commissioner is not entitled to controlling weight or any special
significance, but the ALJ may not simply ignore it.   20 C.F.R. §
1527(e)(3); SSR 96-5p.   Instead, the ALJ must evaluate all the
evidence in the case record to determine the extent to which the
opinion is supported by the record.   SSR 96-5p.

Ordinarily the opinions, diagnoses, and medical evidence of
a treating physician who is familiar with a social security
disability claimant's injuries, treatments, and responses should
be accorded considerable weight in determining disability,
although those opinions are not conclusive.   <u>Myers v. Apfel</u>, 238

---

[129]   Tr. 267.

[130]   Tr. 267-268.

[131]   Tr. 268.

27

F.3d 617, 621 (5th Cir. 2001). Good cause for not giving considerable weight to opinions, diagnoses, and medical evidence of a treating physician include disregarding statements that are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by the evidence. Id. Essentially, a determination of disability is not a medical opinion, but instead a legal conclusion only the Commissioner has the authority to make. Frank v. Barnhart, 326 F.3d 618, 629 (5th Cir. 2003).

Furthermore, in Newton, the Fifth Circuit held that, absent "competing first-hand medical evidence," an ALJ cannot reject the opinion of a treating physician unless the ALJ performs a detailed analysis of the treating physician's opinion under the criteria set forth in 20 C.F.R. § 404.1527(d)(2). Newton, 209 F.3d at 453, 458.

The ALJ in this case cited the factors listed in 20 C.F.R. § 404.1527(d)(2) in his opinion and properly recited the governing law.[132] He acknowledged that Dr. Taylor was Plaintiff's treating physician and "has been involved in the claimant's treatment."[133] The ALJ stated that he "considered the December 2005 opinion" of Dr. Taylor and concluded that "his opinion is unsupported by the objective clinical evidence, his assessment is significantly contradicted by the claimant's own testimony and allegations, and

---

[132]    Tr. 42.

[133]    Id.

28

is inconsistent with the evidence considered as a whole."[134]   The ALJ disagreed with the final conclusion of Plaintiff's treating physician, but fully considered "first-hand medical evidence" before doing so and complied with the regulations when explaining his decision.

First, the ALJ noted that "the claimant reported that during a typical day, he performs household chores such as grocery shopping."[135]   Second, the ALJ noted that "during an examination performed in June 2004, the claimant reported that his leisure time included carving ornate wooden walking canes."[136]   Third, the ALJ noted that Plaintiff "began a course of lumbar spinal decompression during the period from July 15, 2004, through August 4, 2004, which he tolerated well without any complications."[137]   Strengthening these observations is the ALJ's detailed discussion of medical evidence that directly contradicts Dr. Taylor's opinion that immediately precedes the ALJ's analysis.[138]

The ALJ fully discussed and analyzed the "competing first-hand medical evidence" present in the record and concluded that

---

[134]   Id.

[135]   The court notes that Plaintiff testified that although he is able to go grocery shopping, he usually uses an "electric chair" and has to rest after the trip.  Tr. 371.

[136]   Tr. 42.

[137]   Id.

[138]   Tr. 40-41.

29

Dr. Taylor's opinion "is unsupported by the objective clinical evidence."   Thus, the ALJ properly rejected the opinion of the treating physician and was not required to engage in an analysis under the factors listed in 20 C.F.R. § 404.1527(d)(2).   Although Plaintiff may not agree with the ALJ's analysis, this court finds that the ALJ's determination in this regard is supported by substantial evidence and does not evidence any legal error.

**D. Mental Impairments**

Plaintiff next contends the ALJ failed to properly evaluate Plaintiff's mental impairments.   Specifically, Plaintiff alleges the ALJ's RFC assessment is inadequate.

Plaintiff alleges that the ALJ based his determination entirely on the opinion of the ME.   However, the ALJ extensively discussed Plaintiff's mental health records in his decision.[139] The ALJ discussed Plaintiff's February 2004 attempted suicide, but also identified a March 2004 treating note indicating that Plaintiff was feeling and sleeping better.[140]   The March 2004 treating note, as discussed by the ALJ, also stated that Plaintiff denied having any suicide ideations.[141]

The ALJ also thoroughly analyzed the findings of Dr. Lenert, who conducted a June 2004 examination of Plaintiff.[142]   The ALJ

---

[139]    Tr. 36-38, 41.

[140]    Tr. 36, 173.

[141]    Id.

[142]    Tr. 36, 208.

noted Plaintiff's claims during the examination and Dr. Lenert's conclusions that "claimant's mood was somewhat depressed" and his "affect was also noted to be quite flat." [143] The ALJ also took note of Dr. Lenert's diagnosis that Plaintiff had depressive disorder and antisocial personality disorder and had a global assessment of functioning score of fifty.[144]  However, the ALJ pointed to Dr. Lenert's conclusion that Plaintiff was "oriented in all three spheres" and that Plaintiff "exhibited fair insight with marginal judgment."[145]  Furthermore, the ALJ noted Dr. Lenert's assessment that there "was no evidence of looseness of association, tangential or circumstantiality noted in this thought process" and that his "abstract thinking was adequate as well."[146]

The ALJ's determination is further supported by the testimony of the ME.[147]  The ME determined that "claimant's depression imposed only mild restriction of activities of daily living; mild difficulties in maintaining social functioning; and mild difficulties in maintaining concentration, persistence or pace."[148]  The ALJ noted that the ME testified that Plaintiff's

---

[143]   Id.

[144]   Tr. 37.

[145]   Tr. 36.

[146]   Tr. 37.

[147]   See Tr. 375-381.

[148]   Tr. 38.

medical record did not support a finding that Plaintiff's condition met or equaled Listing 12.04.[149]   The ALJ also noted that the record shows that Plaintiff continued to be treated with Effexor for depression with some success.[150]

The court concludes the ALJ properly considered all of the relevant evidence in the record and based Plaintiff's mental RFC determination on substantial evidence.   The ALJ properly accounted for Plaintiff's mental limitations by including within Plaintiff's RFC "limited public contact and low stress unskilled tasks due to depression."[151]

### E. Listing

Plaintiff next argues the ALJ erred in finding that Plaintiff's impairments did not meet or equal the requirements of Listing 1.04, the listing for disorders of the spine.   See 20 C.F.R. Part 404 App. 1 § 1.04 (2005).

Listing 1.04 directs a presumptive finding of disabled at step three in the determination process if Plaintiff's impairment qualifies as a:

> Disorde[r] of the spine (e.g., herniated nucleus pulposus, spinal arachnoidities, spinal stenosis, osteoarthrities, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord.  With:
>
> A. Evidence of nerve root compression characterized by

---

[149]   Id.

[150]   Id.

[151]   Tr. 44.

neuroanatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

"For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria.  An impairment that manifests only some of those criteria, no matter how severely, does not qualify." Sullivan v. Zebley, 493 U.S. 521, 530 (1990).  The ALJ is responsible for making the determination as to whether a severe impairment meets or equals a Listing.  See SSR 96-6P, 1996 SSR LEXIS 3, 7-8.

Here, the ALJ found that Plaintiff's impairments did not meet or equal Listing 1.04, and the court finds this determination to be supported by substantial evidence.[152]

Listing 1.04 requires that a claimant demonstrate "motor loss . . . accompanied by sensory or reflex loss."  See 20 C.F.R. Part 404 App. 1 § 1.04. However, according to Dr. Hanley's June 2004 examination, Plaintiff's motor strength was "5/5 in all muscle groups."[153] Dr. Hanley further concluded that Plaintiff's lower and upper extremities showed "sensory intact."[154] The foregoing constitutes substantial evidence, upon which the ALJ properly based his determination that Plaintiff's limitations did not meet or equal the requirements set forth in

---

[152] See Tr. 38-39.

[153] Tr. 213.

[154] Id.

33

Listing 1.04.

**F. Ability to Perform Other Work**

Plaintiff next contends the ALJ erred in finding that Plaintiff can perform other work existing in significant numbers in the national economy.  Plaintiff alleges that one of the jobs put forth by the VE during testimony is unsuitable for Plaintiff's RFC, and the ALJ's subsequent determination was therefore not based on substantial evidence.

By judicial practice, the burden of proof shifts to the Commissioner at step five of the sequential evaluation, and requires the Commissioner to prove that Plaintiff retains the ability to perform other work existing in significant numbers in the national economy.  See Masterson v. Barnhart, 309 F.3d 267, 271-2 (5th Cir. 2002).  Once the Commissioner meets his burden at step five, the burden then switches to the plaintiff to prove that he could not perform the alternate work stated by the Commissioner.  Carey v. Apfel, 230 F.3d 131, 135 (5th Cir. 2000).  A vocational expert's testimony constitutes substantial evidence for the ALJ's determination.  Carey, 230 F.3d at 145.

In response to the ALJ's hypothetical, which included mental limitations and the limitations of "alternating between sitting and standing at-will," "lifting no more than twenty pounds at a time," "frequently lifting of ten pounds," working at a "light level," and avoiding "heights or climbing" and "moving or dangerous equipment," the VE testified that Plaintiff

34

was capable of performing the jobs of small products assembler, hardware assembler, and bench assembler. Specifically, the VE testified that, in regard to the unskilled position of small products assembler, there "are about 1,000 positions in the Bryan College Station region and about 200,000 nationally."[155] In regard to the unskilled position of hardware assembler, the VE testified that "[t]here are about 300 positions in the Bryan College Station area and about 40,000 nationally."[156] Finally, in regard to the position of bench assembler, the VE testified that "there [are] about 150 positions and about 20,000 nationally."[157]

Although Plaintiff argues that there is confusion about the exact jobs that the VE recommended, each job has a different listing in the Dictionary of Occupational Titles.[158] Furthermore, the VE testified that each job exists in significant numbers in the local and national economy.[159] Plaintiff puts forth no evidence that he is incapable of performing the jobs recommended by the VE. The VE's testimony constituted substantial evidence upon which the ALJ properly based his decision, and satisfied the burden placed on the

---

[155]    Tr. 383-384.

[156]    Tr. 385.

[157]    Id.

[158]    See Defendant's Response to Plaintiff's Motion for Summary Judgment, Docket Entry No. 18, at 11.

[159]    Tr. 383-384.

Commissioner at step 5 of the analysis.

The court recognizes the seriousness of Plaintiff's medical condition. However, the court must review the record with an eye toward determining only whether the ALJ's decision is supported by more than a scintilla, but less than a preponderance of evidence. See Carey, 230 F.3d at 135. The court finds more than a scintilla of evidence in support of the ALJ's decision. Therefore, the court cannot overturn the decision of the ALJ, who is given the task of weighing the evidence and deciding disputes. See Chambliss, 269 F.3d at 522.

The ALJ's decision is supported by substantial evidence and is founded in sound legal standards. Therefore, Defendant's cross motion for summary judgment is granted.

### IV. Conclusion

For all of the foregoing reasons, the court **DENIES** Plaintiff's motion for summary judgment and **GRANTS** Defendant's cross motion for summary judgment.

SIGNED at Houston, Texas, this 31st day of July, 2007.

Nancy K. Johnson
United States Magistrate Judge